UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CATHY S. MILLER,                    )
                                    )
        Plaintiff,                  )
                                    )
        vs.                         )    No. 3:13-CV-00018
                                    )
CAROLYN W. COLVIN,                  )
ACTING COMMISSIONER OF              )
SOCIAL SECURITY,                    )
                                    )
        Defendant.                  )

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits ("DIB") to Plaintiff, Cathy S. Miller. For the reasons set forth below, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

BACKGROUND

On August 21, 2009, Plaintiff, Cathy S. Miller ("claimant"), applied for Social Security Disability Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.  The claimant's alleged onset of her disability was on July 10, 2009.  The Social

Security Administration denied the claimant's initial application, and also denied her claim on reconsideration. On April 18, 2011, the claimant appeared with counsel at an administrative hearing before Administrative Law Judge ("ALJ") Warnecke Miller in Fort Wayne, Indiana. The claimant testified at the hearing, as did Sharon D. Ringenberg, a vocational expert ("VE"). On May 27, 2011, ALJ Miller issued a decision finding the claimant not disabled.

The claimant requested that the Appeals Council review the ALJ's decision, and this request was denied. As a result of the denial, ALJ Miller's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). The claimant has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

DISCUSSION

The claimant was born on June 11, 1974, and was 35 years old on the alleged disability onset date and 38 at the time of the ALJ's decision. (Tr. 162). The claimant has a high school diploma and approximately a semester worth of college credits. (Tr. 45). The claimant is single and has three children. (Tr. 53-54). Her past relevant work includes work as an automobile assembler,

sewing machine operator, and dispatcher. The claimant's last job was as a sewing machine operator. *Id*. The claimant alleges the following impairments: fibromyalgia, asthma, and depression.

The medical evidence can be summarized as follows:

The claimant saw her primary care physician, Dr. Elizabeth Gingrich, M.D., in February of 2008, for fibromyalgia, asthma, and depression. At an exam in July of 2009, Dr. Gingrich noted that The claimant had "trigger point tenderness which is quite marked in hip and shoulder girdle region." (Tr. 261). In December of 2010, after conducting a physical examination, Dr. Gingrich found that the claimant stood and moved stiffly, but could bend to 90 degrees. (Tr. 372-373). Dr. Gingrich diagnosed the claimant with fibromyalgia, joint pain, and depression. (Tr. 373).

Dr. Bruce Lockwitz, M.D., performed a rheumatology evaluation on the claimant and found her symptoms to be most consistent with Dr. Gingrich's diagnosis of fibromyalgia. (Tr. 296). Dr. Lockwitz reviewed X-rays of the claimant's feet, knees, and hands, which he found to be unremarkable. (Tr. 303). He later ordered X-rays of her knees, pelvis, hips, and lumbar spine, which were also normal. (Tr. 350). Dr. Lockwitz referred the claimant to Dr. Gene Grove, M.D. for pain management. (Tr.

402).   Dr. Grove found her symptoms to be consistent with fibromyalgia and referred her to physical therapy.   (Tr. 402-405).   The physical therapist reported that the claimant had a slow gait with the use of a cane, decreased lumbar flexion and extension, lumbar weakness, and tenderness of the sacroiliac joints. (Tr. 400-401).

Dr. Gingrich, the claimant's primary care physician, indicated that the claimant could stand 30 minutes at a time and up to two-hours in an eight-hour work day.   Dr. Gingrich also indicated that the claimant could sit for 30 minutes at a time up to four hours in an eight-hour work day.   Dr. Gingrich also estimated that the claimant could lift ten pounds occasionally and five pounds frequently; and that the claimant could occasionally bend, stoop, and reach overhead with either arm. (Tr. 399).

In November of 2009, Dr. Joe Banks, D.O., a state agency medical consultant, examined the claimant.   Dr. Banks found that the claimant had tender points along her back and shoulder, possibly consistent with fibromyalgia, but that the examination was otherwise unremarkable. (Tr. 287).

With regard to the claimant's psychological impairments, Dr. Gingrich indicated that the claimant exhibited signs of

anhedonia, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. (Tr. 398).

In May of 2010, Dr. Sharon DeVinney, Ph.D., a state agency psychiatric consultant, examined the claimant.  (Tr. 314-19). Dr. DeVinney indicated that the claimant had some difficulty with attention and concentration, and significant difficulty retaining information, but no evidence of a global cognitive impairment. (Tr. 318).  Dr. DeVinney concluded that the claimant's memory loss issues may significantly impair her ability to function, but symptoms of depression, anxiety and obsessive-compulsive disorder did not appear to impair her functioning significantly.  (Tr. 318).


Review of the Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits.  42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...". *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might find adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401

(1971).  In determining whether substantial evidence exits, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or re-weighing evidence. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). With that in mind, however, this Court reviews the ALJ's findings of law de novo and if the ALJ makes an error of law, the Court may reverse without regard to the volume of evidence in support of the factual findings.  *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for DIB under the Social Security Act, the claimant must establish that she is disabled.  To qualify as such, the claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A) and 1382(a)(1).  To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five-step evaluation:

Step 1:    Is  the  claimant performing substantial gainful activity? If yes, the claim is disallowed, if no, the inquiry proceeds to step 2.

Step 2:    Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if

6

yes, the inquiry proceeds to step 3.

Step 3:     Does the claimant have an impairment or combination
            of impairments that meets or equals the severity of
            an impairment in the SSA's Listing of Impairments,
            as described in 20 C.F.R. § 404, Subpt. P, App. 1?
            If yes, then the claimant is automatically disabled;
            if not, then the inquiry proceeds to step 4.

Step 4:     Is the claimant able to perform his past relevant
            work? If yes, the claim is denied; if no, the
            inquiry proceeds to step 5, where the burden of
            proof shifts to the Commissioner.

Step 5:     Is the claimant able to perform any other work
            within his residual functional capacity in the
            national economy? If yes, the claim is denied; if
            no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v); *see
also Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994).

In this case, the ALJ found that the claimant suffered from
severe impairments of fibromyalgia, asthma, and depression, which
significantly affected her ability to work. The ALJ further found
that the claimant did not meet or medically equal one of the
listed impairments and could not perform her past relevant work,
but nonetheless retained the residual functional capacity ("RFC")
to:

            lift and/or carry five pounds frequently and
            ten pounds occasionally, stand and walk for
            two hours in an eight-hour work day, and sit
            for six hours in an eight-hour work day,
            defined as sedentary work in 20 CFR
            404.1567(a); however, she must alternate
            between sitting and standing, but the
            positional change would not render her off

7

task.  She can never climb ladders, ropes, or
scaffolds, crouch or crawl, and she can
occasionally climb ramps or stairs, balance,
stoop, kneel, and reach overhead with either
arm.  She must use a cane, but only when
walking. She must avoid concentrated exposure
to pulmonary irritants such as fumes, odors,
dust, gases, chemicals, or poorly ventilated
areas. Moreover, as the claimant has moderate
difficulties maintaining concentration and
pace, she cannot understand, remember or
carry out detailed instructions, and her pace
is limited to goal-oriented standards rather
than production paced or fast paced work.
Additionally, she requires a job that allows
a written list of duties to be kept at the
workstation.

(Tr. 23).

After considering the claimant's age, education, work
experience and RFC, the ALJ relied upon the testimony of the VE
and concluded that the claimant was not disabled and not entitled
to DIB because she retained the capacity to perform a significant
number of jobs despite her functional limitations.  Thus, the
claimant's claim failed at step 5 of the evaluation process. The
claimant argues that the ALJ committed several errors requiring
reversal.

The claimant believes that the ALJ's decision regarding her
RFC was not supported by substantial evidence because the ALJ did
not specify the frequency with which the claimant needs to
alternate sitting and standing.   The claimant believes the

hypothetical questions the ALJ posed to the VE were flawed for the same reason.   The claimant also believes the ALJ erred in finding that the claimant's pace is limited to goal oriented standards rather than production paced or fast paced work, when the hypothetical question posed to the VE included a slightly different phrasing of the limitation.   And, lastly, the claimant challenges the ALJ's credibility determination.

The ALJ's Residual Functional Capacity Finding

ALJ Miller's RFC states, in part, that the claimant "must alternate between sitting and standing, but the positional change would not render her off task." (Tr. 23).   The claimant argues that the RFC lacks the necessary specificity in that it fails to state the frequency with which the claimant must alternate between sitting and standing.   (DE #25, at 6).   The claimant alleges that the lack of an "at will" option or clear stipulation of the frequency of alternating, i.e. every 30 minutes, violates the requirements of SSR 96p-9.

In contrast, the Commissioner argues that the language of the RFC is sufficient because an "at will" option should be inferred from the use of the phrase "would not render her off task." (DE #28, at 9).   The Commissioner further assumes that the

VE heard the claimant testify to the frequency with which she needs to alternate between sitting and standing and that the VE would account for this testimony in answering the hypotheticals.

Social Security regulations require that an ALJ be clear and specific about the required frequency of alternating between standing and sitting in an RFC. SSR 96-9p provides the following with regard to alternating sitting and standing:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

96-9p, 1996 WL 374186 (July 2, 1996). The Seventh Circuit has interpreted this language rather literally. In *Arnett v. Astrue*, the ALJ's RFC included a requirement that Arnett must "alternate between sitting and standing throughout the day." 676 F.3d 586,

590 (7th Cir. 2012).  Arnett argued that this was insufficient

under 96-9p and the Seventh Circuit agreed:

> [W]e agree with Arnett that the ALJ failed to
> formulate an RFC that is sufficiently
> specific as to how often she must be able to
> sit and stand. . . . An RFC must be specific
> about the required frequency of standing and
> sitting.  SSR 96-9p, 1996 WL 374185, at *6-7,
> 1996 SSR LEXIS 6, at *18-19 (July 2, 1996).
> Arnett's RFC provides that she must be able
> to alternate between sitting and standing
> "throughout the work-day."  This does not
> specify a particular frequency, and does not
> require that Arnett be able to choose to sit
> or stand when she feels it is necessary.

*Id.*  The Seventh Circuit has found references to the need to

stand "as needed" or at the claimant's "own option" sufficient to

uphold an RFC that does not contain a specific statement

regarding the frequency at which a claimant needs to alternate

between standing and sitting. *See Ketelboeter*, 550 F.3d 620, 626

(7th Cir. 2008) (concluding that an RFC specifying that the

claimant could sit or stand "as needed" was sufficient because it

"would necessarily encompass frequent sitting and standing");

*Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (claimant's

argument that the ALJ erred by failing to specify the frequency

with which she would need to alternate between sitting and

standing unavailing where the ALJ specified that she needed work

that would allow her to sit or stand at her "own option.").

In the instant case, neither the hypothetical nor the RFC specifies that the sit stand option is "at will," "as needed," or at her "own option."  The hypothetical and RFC also fails to specify the frequency with which the claimant must alternate between sitting and standing in any other manner.  The Commissioner's argument that one can infer an "at will option" from the ALJ's use of the phrase "would not render her off task" is unpersuasive. Like *Arnett*, an additional phrase unrelated to frequency does not allow an inference that the ALJ intended to allow the claimant to alternate between sitting and standing as often as she desires. SSR 96-9p requires clear language designating frequency of the need to alternate, and the ALJ's RFC contains no reference to either a frequency or an "at will" option.  Like in *Arnett*, remand is required.[1]

Furthermore, the Commissioner's argument that the VE was present during the hearing and would have taken the claimant's testimony regarding the frequency with which she must alternate between sitting and standing into account, is also unpersuasive. The Commissioner relies on *Simila v. Astrue*, 573 F.3d 503 (7th Cir. 2009), to support its position. This case, however, directly contradicts the Commissioners argument.

---

[1] It is noted that the Commissioner neither cited *Arnett* nor made any attempt to distinguish the Court's holding in *Arnett*.

As the Court explained in *Simila*, generally, an ALJ must include all limitations supported by the medical evidence in a hypothetical, but an exception may exist when the record indicates that the VE "independently learned of the limitations (through other questioning at the hearing or outside review of the medical records, for example) and presumably accounted for them." *Id.* at 520-21 (citing *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002)). However, when an ALJ poses a "series of hypothetical questions with increasingly debilitating limitations" and nothing in the record indicates that the VE relied on anything but the hypotheticals, then one cannot assume "that the VE based his testimony on anything *but* the hypotheticals." *Simila*, 573 F.3d at 521 (citing *Young v. Barnhart,* 362 F.3d 995, 1003 (7th Cir. 2004)(emphasis added)); *see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)(indicating this exception is inapplicable where an "ALJ poses a series of increasingly restrictive hypotheticals to the VE, because we infer that the VE's attention is focused on the hypotheticals and not on the record.").

Here, the VE testified to reviewing the record prior to the hearing, and she was present during the testimony of the witnesses; she was not told to disregard the testimony prior to

testifying. However, like in *Simila,* the ALJ gave increasingly restrictive hypotheticals to the VE, at the end of each hypothetical the ALJ prefaced his question with "given this set of hypothetical limitations," and the VE never made reference to the record or any prior testimony when she gave her answers. There is nothing in the record to indicate that the VE based her answers to the hypotheticals on anything but the facts and limitations laid out in the hypotheticals.

Thus, the Commissioner's argument fails. This Court cannot assume that the VE took the claimant's testimony of the frequency with which she needed to alternate sitting and standing into consideration when giving her answers. The ALJ erred when he failed to specify the frequency of sitting and standing in both his hypothetical questions and his RFC. The case must therefore be remanded.

Because remand is required, the claimant's remaining argument need not be addressed by the Court.


CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** for proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

DATED: February 4, 2014                    /s/ RUDY LOZANO, Judge
                                           United States District Court